IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMAL FARAH, on behalf of himself and others similarly situated, | ) ) ) | |
| | ) | Case No. _____ |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| DOUBLE M EXPRESS, INC., | ) | |
| RECRUIT PROMASTER, INC., | ) | |
| WGB FREIGHT LINES, INC., | ) | |
| BB WOLF INC., and MILOS GUBIC, | ) | |
| | ) | |
| Defendants, | ) | |

**CLASS ACTION COMPLAINT**

1.      This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. (Title VII); 42 U.S.C. § 1981 (§ 1981), and the Illinois Human Rights Act, 775 ILCS 5, *et seq*. (IHRA). Plaintiff Jamal Farah applied for employment with defendant Double M Express, Inc. (Double M), but was rejected because of his Somali national origin, ethnicity and/or his Muslim religion. Defendant Recruit Promaster, LLC (Recruit Promaster) is an employment agency that rejected plaintiff's application. Recruit Promaster and Double M are, essentially, the same company, sharing office space, ownership, management and employees.

2.      Plaintiff is asserting class action claims of national origin, religious, and ethnic discrimination based on defendants' refusal to hire and/or refusal to refer for employment Somali and/or Muslim applicants.

**Parties**

3.      During times material to this case, Double M was an Illinois corporation operating a trucking business from its principal place of business located at 91 61st Street, Westmont,

1

DuPage County, Illinois.

4. During times material to this case, WGB Fright Lines, Inc. (WGB Freight) has been an Illinois corporation operating a trucking business from its principal place of business located at 91 61st Street, Westmont, DuPage County, Illinois.

5. During times material to this case, BB Wolf, Inc. (BB Wolf) has been an Illinois corporation operating a trucking business from its principal place of business located at 91 61st Street, Westmont, DuPage County, Illinois.

6. During times material to this case, Recruit Promaster has been an Illinois corporation operating an employment agency from its principal place of business at 91 61st Street, Westmont, DuPage County, Illinois.

7. On or about June 26, 2022, plaintiff applied for employment with Double M.

8. During times material to this case, Recruit Promaster was Double M's employment agency.

9. Double M, Recruit Promaster, WGB Freight and BB Wolf (collectively "the Entity Defendants") comprise a "single employer" and / or they share a "joint employer" relationship. As a result, all of the Entity Defendants are liable for the conduct alleged herein.

10. During the times material to this case, Double M, Recruit Promaster, WGB Freight, and BB Wolf were joint employers in that they:

      a. shared (1) supervision of employees' day-to-day activities, (2) authority to hire or fire employees, (3) promulgation of work rules and conditions of employment, (4) issuance of work assignments, and (5) issuance of operating instructions;

      b. operated from a single address, 91 61st Street, Westmont, DuPage County,

2

Illinois;

c. upon information and belief, were owned by Aleksander Zugic, Milos Mirkovic, and Milos Gubic;

d. upon information and belief, were ultimately and directly managed by Messrs. Zugic, Mirkovic, and Gubic; and

e. shared office staff.

11. During the times material to this case, Double M, Recruit Promaster, WGB Freight, and BB Wolf constituted a single employer in that they:

a. shared (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership;

c. were operated from the same office located at 91 61st Street, Westmont, DuPage County, Illinois;

c. upon information and belief, those entities were owned by Aleksander Zugic, Milos Mirkovic, and Milos Gubic;

d. upon information and belief, they were ultimately and directly managed by Messrs. Zugic, Mirkovic, and Gubic; and

e. shared office staff.

12. During the times material to this case, there was no arm's-length relationship among defendants.

13. During the times material to this case, defendant Milos Gubic was Double M's General Manager.

**Jurisdiction and Venue**

14. This Court has jurisdiction over plaintiff's federal claims based on 28 U.S.C. § 1331

3

(federal question), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. § 2000e-(f)(3).

15. This Court has supplemental jurisdiction over plaintiff's IHRA claim based on 28 U.S.C. § 1367 because plaintiff's claims under the IHRA are so related to the claims over which this court has original jurisdiction that they form part of the same case or controversy.

16. Plaintiff's causes of action arise out of conduct in DuPage County, Illinois, so venue is proper.

**Administrative Facts**

17. On or about August 5, 2022, plaintiff timely filed a Charge of Discrimination (the Charge) with the U.S. Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (IDHR) alleging continuing and systemic national origin and religious discrimination. A copy of the Charge is attached and incorporated as Exhibit 1.

18. In the Charge, plaintiff alleged the basis for class action claims: "The Company's discriminatory hiring policy has impacted me, my co-driver, and all other people with Muslim-sounding names. This also affected all other Muslim applicants and / or applicants of Somali-origin. I bring these claims on their behalf and I intend to pursue a class action including them as the Company's policy, and actions taken pursuant to that policy, constitute class-wide discrimination. Further, this is a continuing action pursuant to an ongoing policy maintained by the employer."

19. During all times material to this case, defendant Double M was an employer under Title VII in that it was engaged in an industry affecting commerce and it had 15 or more employees in each working day in each of twenty or more calendar weeks of 2021 or 2022.

20. During all times material to this case, Recruit Promaster was an employment agency under Title VII in that it regularly undertook to procure employees for an employer or to

procure for employees opportunities to work for an employer.

21.     During all times material to this case, defendant Double M was an employer under the IHRA in that Double M employed one or more employees within Illinois.

22.     During all times material to this case, defendant Recruit Promaster was an employment agency under the IHRA as it regularly undertook to procure opportunities to work, or to procure, recruit, refer or place employees.

23.     On or about January 22, 2024, the EEOC issued a Notice of Right to Sue. Exhibit 2.

24.     On or about February 21, 2024, the IDHR issued a Notice of Right to Sue.  Exhibit 3.

25.     Plaintiff filed this Complaint within 90 days of receipt of these Notices of Right to Sue.

26.     Although WGH Freight, BB Wolf and Recruit Promaster were not specifically named in plaintiff's administrative charge ("the Charge"), they are properly named as defendants to the Title VII and IHRA claims because they were notified of the Charge and given opportunity to participate in conciliation proceedings aimed at voluntary compliance.

27.     The Entity Defendants had notice of the Charge and opportunity to participate in conciliation because they:

> a.     operated from a single address, 91 61st Street, Westmont, DuPage County, Illinois;
>
> c.     upon information and belief, were owned by Aleksander Zugic, Milos Mirkovic, and Milos Gubic;
>
> d.     upon information and belief, were ultimately and directly managed by

Messrs. Zugic, Mirkovic, and Gubic; and

e. shared office staff.

28. Further, the Entity Defendants are properly named as defendants to the Title VI and IHRA claims because:

a. the role of the unnamed parties could not through plaintiff's reasonable effort be ascertained at the time of the filing of the Charge;

b. due to common ownership and operation, the interests of Double M are so similar to the unnamed parties' interests that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed parties in the administrative proceedings;

c. the unnamed parties' absence from the administrative proceedings resulted in no actual prejudice to the interests of the unnamed parties because, based on information and belief, Double M refused the EEOC's attempt to conciliate; and

d. As part of the administrative proceeding, Double M itself identified Recruit Promaster as a responsible party.

**Facts**

29. Plaintiff is of Somali national origin.

30. Plaintiff is Muslim.

31. Plaintiff learned of a "Company Driver" (W-2 employee truck driver) position at Double M through its advertisement.

32. The nature of the position is that Double M provided its drivers with the truck, fuel, tolls, and paid other expenses necessary to perform the job, Double M assigned its drivers deliveries

to perform across the country, and Double M paid them on a weekly basis.

33. During times material to this case, Recruit Promaster recruited employees for Double M.

34. On or about June 23, 2022, Recruit Promaster texted Double M's job advertisement to plaintiff.

35. On or about June 26, 2022, plaintiff applied for a Company Driver position at Double M through Double M's employment agency, Recruit Promaster.

36. Plaintiff submitted his U.S. Department of Transportation (DOT) physical card and commercial driver's license to Recruit Promaster as part of his Double M application, along with plaintiff's co-driver's DOT card and commercial driver's license.

37. Plaintiff's co-driver was also of Somali national origin and Muslim.

38. Recruit Promaster requested email and phone numbers which plaintiff provided as well.

39. After receiving information about plaintiff, defendant Gubic texted Recruit Promaster, stating "We can't do anything with them unfortunately, teams need to go down to 80 and most carriers are avoiding Somali drivers, and to be honest we are to. They are terrible to work with and unsafe." A copy of these text messages is attached as Exhibit 4.

40. Recruit Promaster's recruiter responded to Mr. Gubic: "Any interest … in Mohamed ASHUR from last Thursday?" Mr. Gubic responded, "No Somali please." Recruit Promaster's recruiter asked Mr. Gubic, "Moving forward, no Somali drivers period?" Mr. Gubic answered, "Yes." Recruit Promaster's recruiter also asked "[d]o you want them in the system to shop around to other carriers or just avoid completely?" Mr. Gubic answered, "[w]e don't need them at all." A copy of these text messages is attached as Exhibit 5.

41.     On July 5, 2022, Mr. Gubic texted Recruit Promaster's recruiter, "FYI Somali drivers are the worst of them all, unsafe demanding and unprofessional in every way … Avoid them and don't waste your time."  A copy of these text messages is attached as Exhibit 6.

42.     On July 8, 2022, Mr. Gubic emailed another Recruit Promaster recruiter. The subject line of the email was "Not interested in Somalia drivers." Mr. Gubic stated: "Milos Gubic has assigned you the following new task:  Subject:  Not interested in Somalia drivers." A copy of the email is attached as Exhibit 7.

43.     On or about July 8, 2022, Recruit Promaster's recruiter told plaintiff that Double M said that it did not want any Somali drivers and that Double M explained that Somalis are terrible to work with and unsafe, meaning that Double M would not hire plaintiff, his co-driver, or other people of similar backgrounds.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings Counts I through III as a class action under Fed. R. Civ. P. 23 on behalf of himself and as the Class Representative of the following persons:

> All applicants of Somali national original who have been denied employment with defendants during the relevant limitations period ("the Somali Class").

45.     Counts I through III, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Somali Class.

46.     The Somali Class satisfies Rule 23's numerosity, commonality, typicality, adequacy, predominance, and superiority requirements for a class action.

47.     The Somali Class satisfies the numerosity standard as, based on information and belief, the Somali Class comprises at least 40 persons.

48. Questions of fact and law common to the Somali Class predominate over any questions affecting only individual members. The questions of law and fact common to the Somali Class arising from defendants' actions include, without limitation:

a. Whether Double M maintained a policy and/or practice of rejecting job applicants of Somali national origin;

b. Whether Double M rejected applicants of Somali national origin pursuant to that policy and/or practice;

c. Whether Recruit Promaster refused to refer applicants of Somali national origin for employment pursuant to Double M's policy and/or practice;

d. What are the appropriate damages; and

e. Whether Double M and/or Recruit Promaster acted with malice or reckless indifference to the Somali Class members' federally protected rights, warranting punitive damages.

49. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims.

50. Plaintiff's claims are typical of those of the Somali Class in that:

a. Plaintiff and the Somali Class applied for employment with Double M;

b. Plaintiff and the Somali Class were subjected to the same policy and/or practice of refusing to hire employees of Somali national origin;

c. Double M has refused employment to plaintiff and the Somali Class because of their national origin;

9

      d.      Recruit Promaster has refused to refer the Somali Class members to Double M or other trucking companies for employment because of their national origin; and

      e.      Plaintiff and the other members of the Somali Class have been damaged by defendants' refusal to employ or refer them in the form of lost employment, wages, and benefits.

51. Plaintiff is an adequate representative of the Somali Class because he is a member of that Class and his interests do not conflict with the interests of the other members of the Somali Class he seeks to represent. The interests of the members of the Somali Class will be fairly and adequately protected by plaintiff as the undersigned counsel possess extensive experience prosecuting complex employment and class action claims.

52. Maintenance of the claims asserted in Counts I through III as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Somali Class have little interest in individually controlling the prosecution of separate class actions, Somali Class members are likely unaware of the key facts supporting the claims such as the texts and email quoted above which reflect defendants' policy and practice of refusing to hire employees of Somali national origin, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to relatively small recoveries per member of the Somali Class, and there are no material difficulties impairing the management of a class action.

53. It would be impracticable and undesirable for each member of the Somali Class sought in Counts I through III who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts

and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Somali Class members.

54. Plaintiff brings Counts IV through VI as a class action under Fed. R. Civ. P. 23 on behalf of himself and as the Class Representative of the following persons:

> All applicants with names of Arabic or Muslim origin who have been denied employment with defendants during the relevant limitations period ("the Muslim Class").

55. Counts IV through VI, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Muslim Class.

56. The Muslim Class satisfies Rule 23's numerosity, commonality, typicality, adequacy, predominance, and superiority requirements for a class action.

57. The Muslim Class satisfies the numerosity standard as, based on information and belief, the Muslim Class comprises at least 40 persons.

58. Questions of fact and law common to the Muslim Class predominate over any questions affecting only individual members. The questions of law and fact common to the Muslim Class arising from defendants' actions include, without limitation:

> a. Whether Double M maintained a policy and/or practice of rejecting job applicants with names of Arabic or Muslim origin;
>
> b. Whether Double M rejected applicants with names of Arabic or Muslim origin pursuant to that policy and/or practice;
>
> c. Whether Recruit Promaster refused to refer members of the Muslim Class for employment pursuant to Double M's policy and/or practice;
>
> d. What are the appropriate damages; and

11

    e.    Whether Double M and/or Recruit Promaster acted with malice or reckless indifference to the Muslim Class members' federally protected rights, warranting punitive damages.

59. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims.

60. Plaintiff's claims are typical of those of the Muslim Class in that:

    a.    Plaintiff and the Muslim Class applied for employment with Double M;

    b.    Plaintiff and the Muslim Class were subjected to the same policy and/or practice of refusing to hire applicants with names of Arabic or Muslim origin;

    c.    Double M has refused employment to plaintiff and the Muslim Class because of their national origin;

    d.    Recruit Promaster has refused to refer the Muslim Class members to Double M or other trucking companies for employment because of their national origin; and

    e.    Plaintiff and the other members of the Muslim Class have been damaged by defendants' refusal to employ or refer them in the form of lost employment, wages, and benefits.

61. Plaintiff is an adequate representative of the Muslim Class because he is a member of that Class and his interests do not conflict with the interests of the other members of the Muslim Class he seeks to represent. The interests of the members of the Muslim Class will be fairly and

adequately protected by plaintiff as the undersigned counsel possess extensive experience prosecuting complex employment and class action claims.

62.     Maintenance of the claims asserted in Counts IV through VI as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Muslim Class have little interest in individually controlling the prosecution of separate class actions, Muslim Class members are likely unaware of the key facts supporting the claims such as the texts and email quoted above which reflect defendants' policy and practice of refusing to hire employees with names of Arabic or Muslim origin, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to relatively small recoveries per member of the Muslim Class, and there are no material difficulties impairing the management of a class action.

63.     It would be impracticable and undesirable for each member of the Muslim Class sought in Counts IV through VI who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Muslim Class members.

64.     Plaintiff alleges Counts IV through VI in the alternative to Counts I through III.

### Count I:  Title VII National Origin Discrimination

65.     Paragraphs 1 through 64 are incorporated as though fully stated in this Count.

66.     All administrative prerequisites to filing suit against the Entity Defendants under Title VII have been satisfied.

67.     Double M discriminated against plaintiff and the Somali Class in violation of Title VII, 42 U.S.C. § 2000e-2(a), by refusing to hire them because of their national origin.

68.     Recruit Promaster discriminated against plaintiff and the Somali Class in violation of Title VII, 42 U.S.C. § 2000e-2(b), by failing or refusing to refer them for employment because of their national origin.

69.     As a direct and proximate result of those violations of Title VII, plaintiff has and will continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

70.     As a direct and proximate result of those violation of Title VII, other members of the Somali Class have and will continue to suffer damages including loss of wages and benefits.

71.     Double M and Recruit Promaster acted with malice or reckless indifference to the federally protected rights of plaintiff and the Somali Class, thereby warranting an award of punitive damages.

**WHEREFORE**, plaintiff asks the Court to enter judgment in favor of himself and the Somali Class against the Entity Defendants and grant plaintiff and the Somali Class equitable relief, compensatory damages identified above, punitive damages, attorneys' fees, costs, and such additional relief as is appropriate.

### COUNT II:   IHRA National Origin Discrimination

72.     Paragraphs 1 through 71 are incorporated as though stated in this Count.

73.     All administrative prerequisites to filing suit against the Entity Defendants under the IHRA have been satisfied.

74.     Double M committed civil rights violations against plaintiff and the Somali Class in violation of the IHRA, 775 ILCS 5/2-102(A), by refusing to hire them because of their Somali national origin.

75.     Recruit Promaster committed civil rights violations against plaintiff and the Somali

Class in violation of the IHRA, 775 ILCS 5/2-102(B), by refusing to accept applications and/or failing to refer for employment plaintiff and the Somali Class based on their Somali national origin.

76.     As a direct and proximate result of those violations of the IHRA, plaintiff has and will continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

77.     As a direct and proximate result of those violation of the IHRA, other members of the Somali Class have and will continue to suffer damages including loss of wages and benefits.

**WHEREFORE**, plaintiff asks the Court to enter judgment in favor of himself and the Somali Class against the Entity Defendants and grant plaintiff and the Somali Class equitable relief, compensatory damages as identified above, attorneys' fees, costs, and such additional relief as is appropriate.

**COUNT III:   § 1981 Ethnicity Discrimination**

78.     Plaintiff alleges Count III in the alternative to Counts I and II.

79.     Paragraphs 1-14, 16 and 29-53 are incorporated as though stated in this Count.

80.     Defendant Double M rejected plaintiff and members of the Somali Class for employment because of their ethnicity.

81.     In rejecting plaintiff and the Somali Class for employment because of their ethnicity, Double M violated 42 U.S.C. § 1981.

82.     In refusing to refer plaintiff and the Somali Class for employment because of their ethnicity, Recruit Promaster violated 42 U.S.C. § 1981.

83.     But for defendants' policy and practice of rejecting job applicants of Muslim ethnicity, plaintiff and the Muslim Class would have been hired.

84.     As a direct and proximate result of the violation of § 1981, plaintiff has and will

15

continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

85. As a direct and proximate result of the violation of § 1981, other members of the Somali Class have and will continue to suffer damages including loss of wages and benefits.

86. Double M and Recruit Promaster acted with malice or reckless indifference to the federally protected rights of plaintiff and the Somali Class, thereby warranting an award of punitive damages.

**WHEREFORE**, plaintiff asks the Court to enter judgment in favor of himself and the Somali Class against defendants and grant plaintiff and the Somali Class equitable relief, compensatory damages as identified above, punitive damages, attorneys' fees, costs, and such additional relief as is appropriate.

### Count IV:  Title VII National Origin and /or Religious Discrimination

87. Paragraphs 1 through 86 are incorporated as though fully stated in this Count.

88. All administrative prerequisites to filing suit against the Entity Defendants under Title VII have been satisfied.

89. Double M discriminated against plaintiff and the Muslim Class in violation of Title VII, 42 U.S.C. § 2000e-2(a), by refusing to hire them based on their national origin and/or religion because of their national origin.

90. Recruit Promaster discriminated against plaintiff and the Muslim Class in violation of Title VII, 42 U.S.C. § 2000e-2(b), by refusing to refer them for employment because of their national origin and/or religion.

91. As a direct and proximate result of those violations of Title VII, plaintiff has and will continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment

16

of life, and other consequential damages.

92. As a direct and proximate result of those violations of Title VII, other members of the Muslim Class have and will continue to suffer damages including loss of wages and benefits.

93. Double M and Recruit Promaster acted with malice or reckless indifference to the federally protected rights of plaintiff and the Muslim Class, thereby warranting an award of punitive damages.

**WHEREFORE**, plaintiff asks the Court to enter judgment in favor of himself and the Muslim Class against the Entity Defendants and grant plaintiff and the Muslim Class equitable relief, compensatory damages as identified above, punitive damages, attorneys' fees, costs, and such additional relief as is appropriate.

### COUNT V:  IHRA Religious and/or National Origin Discrimination

94. Paragraphs 1 through 93 are incorporated as though stated in this Count.

95. All administrative prerequisites to filing suit against the Entity Defendants under the IHRA have been satisfied.

96. Double M discriminated against plaintiff and the Muslim Class because of their national origin and/or religion in violation of the IHRA, 775 ILCS 5/2-102(A), by refusing to hire them because of their on their national origin and/or religion.

97. Recruit Promaster discriminated against plaintiff and the Muslim Class because of their national origin and/or religion in violation of the IHRA, 775 ILCS 5/2-102(B), by refusing to refer them for employment based on their national origin and/or religion.

98. As a direct and proximate result of those violations of the IHRA, plaintiff has and will continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

17

99. As a direct and proximate result of those violations of the IHRA, other member of the Muslim Class have and will continue to suffer damages including loss of wages and benefits.

WHEREFORE, plaintiff asks the Court to enter judgment in favor of himself and the Muslim Class against the Entity Defendants and grant plaintiff and the Muslim Class equitable relief, compensatory damages as identified above, attorneys' fees, costs, and such additional relief as is appropriate.

### COUNT VI:   § 1981 Ethnicity Discrimination

100. Plaintiff alleges Count VI in the alternative to Counts IV and V.

101. Paragraphs 1-14, 16, 29-43 and 54-64 are incorporated as though stated in this Count.

102. Defendant Double M rejected plaintiff and members of the Muslim Class for employment because of their ethnicity.

103. In rejecting plaintiff and the Muslim Class for employment because of their ethnicity, Double M violated 42 U.S.C. § 1981.

104. In refusing to refer plaintiff and the Muslim Class for employment because of their ethnicity, Recruit Promaster violated 42 U.S.C. § 1981.

105. But for defendants' policy and practice of rejecting job applicants of Muslim ethnicity, plaintiff and the Muslim Class would have been hired.

106. As a direct and proximate result of the violation of § 1981, plaintiff has and will continue to suffer damages including loss of wages, benefits, humiliation, loss of enjoyment of life, and other consequential damages.

107. As a direct and proximate result of the violation of § 1981, other members of the Muslim Class have and will continue to suffer damages including loss of wages and benefits.

108.    Double M and Recruit Promaster acted with malice or reckless indifference to the federally protected rights of plaintiff and the Muslim Class, thereby warranting an award of punitive damages.

**WHEREFORE**, plaintiff asks the Court to enter judgment in favor of himself and the Muslim Class against defendants and grant plaintiff and the Muslim Class equitable relief, compensatory damages as identified above, punitive damages, attorneys' fees, costs, and such additional relief as is appropriate.

Dated: March 1, 2024

Respectfully submitted,
**SILERSTEIN|WOLF, LLC**
Ferne P. Wolf (Missouri Bar # 29326)
(*pro hac vice* application forthcoming)
530 Maryville Center Drive, Suite 460
St. Louis, Missouri  63141
Telephone:     (314) 744-4010
Facsimile:      (314) 744-4026
Email:  fw@silversteinwolf.com

**WEINHAUS & POTASHNICK**
      /s *Mark Potashnick*
Mark A. Potashnick (Missouri Bar # 41315)
(admitted *pro hac vice*)
11500 Olive Blvd., Suite 133
St. Louis, Missouri  63141
Telephone:     (314) 997-9150
Facsimile:      (314) 997-9170
Email:  markp@wp-attorneys.com

**LEGALSOLVED LLC**
Edward "Coach" Weinhaus
(Missouri Bar # 72255)
(*pro hac vice* application forthcoming)
eaweinhaus@gmail.com
10859 Picadily Sq. Dr.
Creve Coeur, MO  63146
Telephone: (314) 580-9580

Attorneys for Plaintiff Jamal Farah

19